✓ Priority
✓ Send
___ Clsd
✓ Enter
_No_ ~~JS-5~~/JS-6
___ JS-2/JS-3
___ Scan Only

FILED
CLERK, U.S. DISTRICT COURT
JUN 14 2007
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

ENTERED
CLERK, U.S. DISTRICT COURT
JUN 18 2007
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO GUZMAN, by and through his next friend, JUAN CARLOS CHABES,<br><br>    Petitioner,<br><br>    v.<br><br>MICHAEL CHERTOFF, Secretary, Department of Homeland Security; JAMES T. HAYES, Field Office Director, U.S. Immigration and Customs Enforcement; RONALD J. KRAMER, Consul General of the United States; LEROY BACA, Sheriff of the County of Los Angeles; ROBERT OLMSTED, Captain, Los Angeles County Men's Central Jail,<br><br>    Respondents. | Case No. CV 07-03746 GHK (SSx)<br><br>**ORDER RE: PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>[Application filed on June 11, 2007] |

## I. BACKGROUND[1]

On May 11, 2007, Petitioner Pedro Guzman, under circumstances that are not yet entirely clear, signed an INS Form I-826, Notice

---

[1] This case is assigned to the calendar of Hon. George H. King. Because Judge King was unavailable, pursuant Local Rule 52-5, the undersigned was designated to hear the Petitioner's request for emergency relief.

of Rights and Request for Disposition. The checked portion of the form stated:[2]

> I admit that I am in the United States illegally, and I believe that I do not face harm if I return to my county. I give up my right to a hearing before the Immigration Court. I wish to return to my country as soon as arrangements can be made to effect my departure. I understand that I may be held in detention until my departure.

(Government Opp'n Ex. D.)

The next day, Guzman was delivered to the Mexican border near Tijuana and released.

As has since become clear, Guzman was not in the United States illegally. He was not returning to his country by going to Mexico. His country is the United States, and he is a citizen.[3]

How this all came about involves disputed matters that the Court need not resolve at this time. On this motion for emergency relief, the Court addresses only the situation as it now stands: Mr. Guzman has been removed from this country, his home. He is believed to be somewhere in Mexico. He is developmentally disabled. And, despite persistent and desperate efforts, his family has been unable to locate him since May 11, 2007.

---

[2] The form signed by Guzman was in Spanish; the quoted translation was provided by the government.

[3] Although the issue was unsettled at the time the case was filed, the government revealed that DHS had obtained an official copy of Guzman's birth certificate, which documents that Guzman was born in California. While the government concedes Mr. Guzman's citizenship for the time being, it reserved the right to contest the issue at some future point in this lawsuit.

## II. PETITIONER'S MOTION

Petitioner, through his next friend Juan Chabes, filed an ex parte application for a temporary restraining order on June 11, 2007. He seeks the following relief:

1. That the Department of Homeland Security (DHS) and U.S. Bureau of Immigration and Customs Enforcement (ICE) (the "Federal Respondents") remove any impediment to Guzman's returning to this country; and

2. That the Federal Respondents "take all necessary measures to locate Mr. Guzman and facilitate his return to the United States."

## III. THE HEARING

On June 13, 2007, at 4:00 P.M., the Court held a hearing on Petitioner's application. Present on behalf of the Petitioner were Mark Rosenbaum, Catherine Lhamon, Melinda Bird, Mary Tiedeman and Stacy Tolchin. Representing the Federal Respondents were Assistant United States Attorney, Chief of the Civil Division Leon Weidman, and Assistant United States Attorney Katherine Hikida. Representing Respondents Sheriff Baca and the Los Angeles County Sheriff's Department was Paul Beach. Also present were Supervisory Deportation Officer Jorge Field of ICE, and, on invitation of the Court, Douglas Loisel, Ph.D., of the Salvation Army.

On consultation with the Court, the government and Officer Field agreed to take the following measures to secure Mr. Guzman's safe return to his family:

1. DHS will remove any restrictions on Guzman's reentry to this country.

2. Officer Field will place a reference to Mr. Guzman in TECS,[4] a law enforcement database managed by ICE, indicating that Guzman is a United States Citizen, that he is mentally or developmentally disabled, and that his family is trying to find him.

3. Officer Field will contact the United States embassy in Mexico City, and the ICE attaché there, to disseminate the information regarding Guzman, and seek that the embassy and the attaché further disseminate this information to local consulates and ICE/DHS operatives in Tijuana, Otay, Ensenada, Nogales, and other nearby cities and towns.

4. Officer Field and/or the U.S. Attorney's Office will contact the U.S. State Department or other appropriate agencies in order to secure their assistance in contacting Mexican officials and police agencies to: (1) discern whether they have had any contact with Guzman; (2) provide them with the above information concerning Guzman; (3) otherwise seek their assistance in locating Guzman.

5. All agencies and parties who are contacted regarding Guzman will be instructed to contact Officer Field, who will take immediate measures to reunite Guzman with his family.

6. The government and Officer Field will maintain contact with Guzman's family and his attorneys, to keep them informed on the progress of the search.

In addition to the actions taken by the government, Mr. Loisel volunteered the assistance of the Salvation Army's missing persons

---

[4] See generally 70 Fed. Reg. 17857 (April 7, 2005) (describing TECS).

resources and network of churches in Mexico. He also offered to provide Mr. Guzman's family with rental and financial assistance during the search for Mr. Guzman.

### IV. FURTHER STATUS REPORT

The government will file a status report by 4:00 P.M. on June 14, 2007, informing the Court of its progress on the above measures.[5] Additional hearings will be set as deemed necessary by the Court.

### V. CONCLUSION

The government has agreed to remove any immigration-related impediments to Guzman's return to the country. To the extent that this relief is sought in Petitioner's application, the application is **DENIED** as **MOOT**.

Recognizing that, based upon his birth certificate and other information, Petition's status as a United States citizen appears to be correct, the government reserves the right to contest such status should the need arise.

To the extent that Petitioner seeks a mandatory injunction from the Court ordering the government to commit particular resources in searching for Mr. Guzman in Mexico, the application is **DENIED**. "[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities." *Massachusetts v. E.P.A.*, --- U.S. ---, 1297 S. Ct. 1438, 1459 (2007). An executive agency's decisions about how to allocate its on-the-ground human resources is quintessentially within such discretion. *See, e.g., Four v.*

---

[5] The government should provide a courtesy copy to the court and serve Petitioner's counsel by email.

*U.S. ex rel. Bureau of Indian Affairs*, 431 F. Supp. 2d 985, 993 (D.N.D. 2006). A mandatory injunction against the government is the equivalent of a writ of mandamus and "governed by like considerations." *Miguel v. McCarl*, 291 U.S. 442, 452 (1934); *see also Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 317 (1958); *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 831 (9th Cir. 2002). Because mandamus relief does not lie to "direct the exercise of judgment or discretion," *see Miguel*, 291 U.S. at 451, the Court cannot grant the relief sought by Petitioner.

IT IS SO ORDERED.

Dated: 6-14-07

DEAN D. PREGERSON
United States District Judge